KRULIKOWSKI v. TIDE WATER OIL SALES CORPORATION.

1. NUISANCE—INJUNCTION—BUILDING RESTRICTIONS.

Owner of residence in district which has ceased to be residential is not entitled to restrain operation of plant for storage of motor oils on adjoining lot, the use of which is in no way restricted, on ground of nuisance, where complaint as to smoke and odors is not sustained, although enjoyment of plaintiff's home has been affected by erection of storage tanks so near to it as to shut off light and air in part.

2. EASEMENTS—LIGHT AND AIR—PRESCRIPTION.

Easement for light and air may not be acquired by use or by prescription.

3. ADJOINING LANDOWNERS—RIGHT TO BUILD TO LOT LINE—NUISANCE.

Adjoining owner may build up to lot line unless restricted from doing so, or unless he intends thereby to injure his neighbor without acquiring advantage or benefit to himself.

4. EQUITY—TRANSFER TO OTHER SIDE OF COURT.

Where, in suit in equity court, plaintiff failed to establish equitable cause for relief, but may have right to action at law for damages, defendant was entitled to dismissal of suit unless transfer was had to law side of court.

Appeal from Wayne; O'Brien (Ernest A.), J. Submitted April 22, 1930. (Docket No. 99, Calendar No. 34,758.) Decided October 3, 1930.

Bill by Frank Krulikowski against Tide Water Oil Sales Corporation, a Delaware corporation, to abate nuisance and for other relief. From decree dismissing bill, plaintiff appeals. Affirmed, and remanded for transfer to law side should plaintiff so desire.

As to right to enjoin anticipated nuisance by erection of gas and oil storage plants, see annotation in 7 A. L. R. 749; 26 A. L. R. 937; 37 A. L. R. 724; 55 A. L. R. 880.

*Harry J. Lippman,* for plaintiff.

*Campbell, Bulkley & Ledyard (Harold R. Smith* and *Edward C. P. Davis,* of counsel), for defendant.

SHARPE, J.   The plaintiff is the owner of lot 65, 30 x 100 feet in size, situated on the north side of Georgia street, in a subdivision of the city of Detroit, on which stands a two-family frame flat building, the lower flat of which is occupied by him, and the upper flat of which is rented. The building stands very close to the east line of the lot. A railroad company owns a right of way about 250 feet to the east, and runs its trains thereon. The defendant company is the owner of the land between plaintiff's lot and the railroad right of way, and also land in the rear of plaintiff's premises. While certain building restrictions are imposed on plaintiff's lot, there are none on defendant's property.

Defendant is engaged in the business of the storage and sale of motor oils, etc., and about September, 1925, it began the erection of its present plant. It first built a brick office building, almost in the rear of plaintiff's lot, and next a storage house abutting the railroad tracks and Georgia street. The storage tanks were later built. This structure consists of 5 large tanks overhanging and resting on concrete foundations about 15 feet high. These abut on Georgia street, and stand very close to the west side of its lot and about 4 feet from plaintiff's building. An overhead feed pipe leads from the storage house to the storage tanks. Defendant's plant was not fully completed until the spring of 1926, but in December, 1925, there was an overflow of oil from one of the tanks, which went upon plaintiff's property and did considerable damage thereto. Defendant's

manager, John Long, testified to the reason therefor as follows:

"Those tanks did overflow once, when the first car was pumped into the tanks. That was in December, 1925, about the middle of the month; I don't know exactly the date, in the evening around six o'clock, I should say. I don't know. I was pumping the tank, and I went down in the basement to look at the furnace, and when I came out the tanks had started to overflow. And I immediately rushed to the pump house and kicked off the pump. That stopped the overflow, of course. I thought I knew the capacity of the tank before I commenced pumping the oil into it, but I was mistaken; I thought the tank held 1,500 gallons more than it did. That was the reason for my not shutting the pump off before leaving; I thought I had lots of room. Now I know the capacity of the tanks; I learned that from very expensive experience, and we have never since that time had an overflow in loading tanks or from any occurrence.

"None of the tanks leak at the present time. One tank did leak slightly, but that was toward the warehouse, and the tank next to Georgia. But I do not think it leaked a quarter of a pint, because I immediately had the plumber tighten up one of the rivets as soon as I discovered the leakage. There has never been any leakage in the tanks other than that nor any overflow from the tanks other than the time I spoke of."

On December 20, 1926, plaintiff filed his bill of complaint herein, setting forth at greater length the facts above stated, and also alleging that, due to the emission of smoke and noxious odors from defendant's plant, a private nuisance had been created and plaintiff's premises greatly damaged and decreased in value thereby. A permanent injunction to restrain the further operation of defendant's plant, and an accounting of the damages sustained by plaintiff were prayed for.

The trial court, after hearing the evidence submitted, dismissed the bill. He found that defendant was in no way restricted in the use it should make of its premises; that its operation of its plant did not constitute a nuisance, and that, if plaintiff sustained damages by the overflowing of defendant's tank, he had an adequate remedy at law therefor. Plaintiff has appealed.

An examination of the record satisfies us that the conclusion reached was justified by the proofs submitted. The neighborhood in which plaintiff's home is situated has ceased to be a residential section. The complaint as to smoke and odors which arise from defendant's plant is not sustained. That the enjoyment of his home has been affected by the erection of the storage tanks so near to it as to shut off the light and air in part is clearly established.

An easement for light and air may not be acquired by use or by prescription. An adjoining owner may build up to his lot line, unless restricted from doing so, or unless he intends thereby to injure his neighbor or acquire no advantage or benefit to himself. *Flaherty* v. *Moran,* 81 Mich. 52 (8 L. R. A. 183, 21 Am. St. Rep. 510); *Kuzniak* v. *Kozminski,* 107 Mich. 444 (61 Am. St. Rep. 344); *Peek* v. *Roe,* 110 Mich. 52.

No equitable cause for relief having been established, the defendant was entitled to a dismissal of the bill, unless transfer to the law side of the court was had. On plaintiff's request, such an order would doubtless have been made, but no such request was preferred. We can but affirm the decree, with costs to defendant, but remand will be made to the circuit court to enable plaintiff to move for a transfer to the law side of the court, should he so desire.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred. CLARK, J., did not sit.